UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUNDEEP SINGH, through his next friend Chanelle Green Navarro,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>JAMES JANECKA, Warden, Adelanto ICE Processing Center,<br><br>　　　　　　　　Defendant. | Case No. 5:26-cv-00671-SPG-AJR<br><br>**ORDER DENYING APPLICATION FOR EMERGENCY TEMPORARY RESTRAINING ORDER AND STAY OF REMOVAL [ECF NO. 2]** |

Petitioner Sundeep Singh ("Petitioner"), through his next friend Chanelle Green Navarro, has filed a Petition for a Writ of Habeas Corpus, (ECF No. 1 ("Petition")), and an Application for an Emergency Temporary Restraining Order and Stay of Removal, (ECF No. 2 ("Application")). In the Application, Petitioner argues that his continued detention violates 8 U.S.C. § 1231(a)(6), as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). *See* (Application at 1–2). Petitioner requests interim injunctive relief in the form of an order to prevent Respondent James Janecka ("Respondent") from effecting his removal from the United States. *See* (ECF No. 2-1 ("Proposed TRO Order")).

The Court has read and considered the Application and concluded that the Application is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the submissions, the relevant law, and the record in this

case, the Court DENIES the Application, without prejudice to Petitioner re-filing an application for interim injunctive relief at a later time. As explained below, the instant Application fails to show that Petitioner is likely to succeed on the merits of his claim for release pursuant to § 1231(a)(6) or that Petitioner faces irreparable harm in the absence of an injunction to prevent his removal.

## I.   BACKGROUND

Petitioner is a German national detained at the Immigration and Customs Enforcement ("ICE") Processing Center in Adelanto, California. *See* (Petition at 2; ECF No. 6-1, Declaration of Jorge Suarez ("Suarez Decl."), ¶ 4). Based on the documents attached to the Application, it appears that Petitioner has resided in the United States since at least 1989. *See* (Application at 7). The Application describes Petitioner as "stateless" but provides no further details. *See* (*id.* at 1).

On or about October 26, 2009, Petitioner was convicted of driving under the influence of alcohol, in violation of California Vehicle Code § 23152(b), and sentenced to two days in jail. *See* (Suarez Decl. ¶ 5). Thereafter, on or about June 16, 2011, an immigration judge ordered Petitioner's removal to Germany. *See* (*id.* ¶ 6). Petitioner claims that, at some point in 2011, an unspecified embassy denied a request to issue him travel documents. *See* (Application at 2). On or about June 22, 2022, Petitioner was convicted of false imprisonment, in violation of California Penal Code § 236, and sentenced to 111 days in jail. *See* (Suarez Decl. ¶ 7). On or about August 18, 2023, Petitioner was convicted of violating a protective order, in violation of California Penal Code § 166(c)(1), and sentenced to 29 days in jail. *See* (*id.* ¶ 8). On or about May 21, 2024, Petitioner was convicted of disturbing the peace, in violation of California Penal Code § 415(2), and sentenced to 29 days in jail. *See* (*id.* ¶ 9).

From at least May 8, 2019, through November 20, 2025, Petitioner was subject to an Order of Supervision ("OSUP"). *See* (Application at 13). On November 20, 2025, Petitioner was arrested and placed in immigration detention. *See* (*id.* at 2); *see also* (Suarez Decl. ¶ 10). On the same day, Petitioner was served with a Notice of Revocation of

Release. *See* (Suarez Decl. ¶ 10). The Notice of Revocation states that, based on a review of Petitioner's file and a determination of changed circumstances, ICE determined that Petitioner could be "expeditiously removed from the United States pursuant to the outstanding order of removal." (ECF No. 6-2). The Notice of Revocation further provides that Petitioner's "case is under current review by Germany for the issuance of a travel document." (*Id.*).

According to the Suarez Declaration, in December 2025 and January 2026, ICE attempted to obtain travel documents to effectuate Petitioner's removal to Mexico based on Petitioner's wife being a dual citizen of Mexico and the United States. *See* (Suarez Decl. ¶ 11). However, to date, ICE has not been able to secure Mexican travel documents for Petitioner. *See* (*id.*). On February 5, 2026, ICE submitted a travel document request to the German Consulate in Los Angeles, California. *See* (*id.* ¶ 12). Petitioner claims that, on the same day as that request, an ICE Deportation Officer told him that "the 2011 embassy denial records are 'lost.'" (Application at 2).

On February 13, 2026, Petitioner, acting through his wife, filed the Petition and the instant Application. *See* (ECF Nos. 2, 3). In the Petition, Petitioner asserts four claims. *See* (Petition at 3–4). First, Petitioner claims that he is subject to indefinite immigration detention, in violation of 8 U.S.C. § 1231(a)(6), as interpreted by *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). *See* (Petition at 3). Second, Petitioner argues that his detention violates the Fifth Amendment's Due Process Clause because he complied with all ICE supervision requirements for a 15-year period before he was detained. *See* (*id.*). Third, Petitioner argues that his detention violates the Due Process Clause because his current detention is based on a clerical error. *See* (*id.* at 4). Finally, Petitioner argues that his continued detention violates 8 U.S.C. § 1231(a)(2) because the Government is generally prohibited from detaining an alien beyond a 90-day removal period. *See* (*id.*).

In the Application, Petitioner only argues that his detention is unlawful because his removal is not likely in the foreseeable future. *See* (Application at 2). Petitioner seeks interim injunctive relief in the form of an "Emergency Stay of Removal" to enjoin

Respondent "from removing Petitioner from the United States" pending a further court order. *See* (Proposed TRO Order). On February 16, 2026, Respondent filed a brief in opposition to the Application. *See* (ECF No. 6 ("Opp.")).

## II. LEGAL STANDARD

A temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical." (internal quotation marks and citation omitted)). A plaintiff may secure a temporary restraining order upon establishing that: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *See Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (citing *Winter*, 555 U.S. at 20).

"[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). "'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Id.* (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

The court is permitted to consider the parties' pleadings, declarations, affidavits, and exhibits submitted when deciding an application for a temporary restraining order. *See*

*Earth Island Inst. v. Nash*, No. 1:19-cv-01420-DAD-SAB, 2020 WL 1936701, at *6 (E.D. Cal. Apr. 21, 2020) ("[I]n considering a motion for preliminary injunction, a court may consider and rely upon declarations, affidavits, and exhibits submitted by the parties." (citations omitted)); *Harper v. Poway Unified Sch. Dist.*, 345 F. Supp. 2d 1096, 1119–20 (S.D. Cal. 2004) (considering declarations submitted by defendants to deny plaintiff's request for a preliminary injunction). "The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984). The urgency of the relief sought necessitates a prompt determination and can make it difficult to obtain admissible evidence. *See id.*

## III. DISCUSSION

The Application only seeks interim injunctive relief based on Petitioner's claim under 8 U.S.C. § 1231(a)(6), as interpreted by *Zadvydas*. *See* (Application at 2).[1] Based on the record presented, Petitioner has not sufficiently shown that he is likely to succeed on the merits of this claim. Further, as the Application only seeks an order to prevent Petitioner's removal from the United States, Petitioner has not sufficiently shown a likelihood of irreparable harm in the absence of interim injunctive relief.

### A. Likelihood of Success on the Merits

A noncitizen ordered removed must be removed "from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). The Government is required to detain the noncitizen for this initial 90-day period for the purpose of effectuating removal. *See* 8 U.S.C. § 1231(a)(2)(A). If removal is not effectuated during this period, "the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). However, under 8 U.S.C. § 1231(a)(6), certain

---

[1] In the Application, Petitioner does not raise the arguments set forth in the Petition that his detention violates the Fifth Amendment's Due Process Clause or 8 U.S.C. § 1231(a)(2). *See generally* (Application); *see also* (Petition at 3–4). Accordingly, these arguments are not properly presented as a basis for interim injunctive relief.

"[i]nadmissible or criminal aliens" subject to an order of removal "may be detained beyond the removal period." *See* 8 U.S.C. § 1231(a)(6).

In *Zadvydas*, the Supreme Court "read an implicit limitation" into § 1231(a)(6) to prevent the Government from indefinitely detaining aliens subject to an order of removal. *See* 533 U.S. at 689. The Court explained that an interpretation of § 1231(a)(6) that permitted indefinite immigration detention would "raise a serious constitutional problem" under the Fifth Amendment's Due Process Clause. *Id.* at 690. In assessing a constitutionally reasonable period for detention, the Court instructed that the judiciary must "grant the Government appropriate leeway" in light of the foreign policy considerations attendant in immigration enforcement and the Executive Branch's immigration-related expertise. *See id.* at 700. Therefore, the Court concluded that it was "practically necessary" to recognize that the Government may "presumptively" detain an alien subject to removal for a six-month period. *See id.* at 701.

Respondent defends Petitioner's continued detention under 8 U.S.C. § 1231(a)(6). Petitioner does not contend that he has previously been subject to immigration detention. Therefore, on the record presented, it appears that Petitioner has been in immigration detention for a total period of approximately three months. *See* (Suarez Decl. ¶ 10). As such, his detention is presumptively reasonable under *Zadvydas*. *See* 533 U.S. at 701. On the record presented, there are no facts to suggest that Petitioner is subject to indefinite detention. While the Application vaguely references a "2011 embassy denial," (Application at 2), Petitioner does not claim that Germany previously denied a request for travel documents. Petitioner also does not provide any information about the basis for the "2011 embassy denial." Therefore, Petitioner is not likely to succeed on his claim that his continued detention violates § 1231(a)(6), as interpreted by *Zadvydas*.

**B.     Irreparable Harm**

Separately, Petitioner has not shown that he is likely to suffer irreparable harm in the absence of interim injunctive relief. In the Application, Petitioner only requests an order to stay his removal and enjoin Respondent from removing him from the United

States. *See* (Proposed TRO Order).  However, Petitioner has not shown that he is likely to suffer irreparable harm in the absence of a stay of removal.  The Petition, by its nature, seeks Petitioner's release from custody.  *See* (Petition); *see also Deck v. California*, No. 22-55923, 2023 WL 5696531, at *1 (9th Cir. Sept. 5, 2023) ("The purpose of habeas relief is to effect release from illegal custody.").  The Petition does not challenge the legality of the order of removal, does not address the Court's jurisdiction to consider such a challenge or to order a stay of removal, and does not seek any form of relief other than release from custody.  Therefore, even if Petitioner was able to show a likelihood of success on the merits, the Application fails to show that Petitioner is likely to suffer irreparable harm absent the requested relief.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES the Application without prejudice to re-filing at a later date based on a sufficient showing of the need for interim relief.

**IT IS SO ORDERED.**

DATED: February 18, 2026

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE